JAMES E. JAGGARS, Complainant-Appellee, v.
AETNA INSURANCE COMPANY, Defendant-
Appellant.—469 S.W. 2d 491

Western Section. June 16, 1970.

Certiorari Denied by Supreme Court December 7, 1970.

W. W. Lackey, Savannah, for defendant-appellant.

Robert B. Smith, Savannah, for complainant-appellee.

CARNEY, P.J. The defendant below, Aetna Insurance Company, has appealed and assigned error from a judgment of $5,000.00 rendered by the Chancellor below in favor of the complainant, James E. Jaggars. The complainant, Jaggars, had recovered a judgment of $5,000.00 in the Circuit Court of Hardin County against his former employer, Joe Gibbs, for personal injuries sustained when a dump truck, owned and operated by Gibbs, skidded off a highway and turned over. The complainant was riding in the cab of the truck and was injured in the accident. The defendant-appellant, Aetna Insurance Company, had liability coverage on the gravel truck and defended the suit on behalf of Gibbs under a reservation of rights agreement but Aetna refused to pay the judgment after trial.

It was the contention of Aetna in the trial below and in this court that it is not liable under its policy to the complainant because the complainant, Jaggars, was an employee of Joe Gibbs, owner of the gravel truck, at the time of the accident and that employees were expressly excluded from coverage. The Chancellor, without a jury held that the complainant, James E. Jaggars, was not an employee at the time of the accident and was entitled to a decree against the defendant insurance company.

The determinative question before this Court is whether or not the evidence preponderates against the finding of the Chancellor that the complainant, James E. Jaggars, was not an employee of Joe Gibbs at the time of the accident. T.C.A. Section 27-303.

There is no dispute concerning the determinative facts. For three months prior to August 27, 1964, the complainant, Jaggars, had been employed by the policyholder, Joe Gibbs, to drive a gravel truck owned by Joe Gibbs. Complainant Jaggars, who lived at Morris Chapel, Tennessee, had an appointment in Memphis, Tennessee, on August 28, 1964, for the purpose of making application for appointment to the Tennessee Highway Patrol. He had notified his employer that he would not be available for work on August 28, 1964, and would quit early on August 27, 1964. On August 27, 1964, the policyholder, Gibbs, owner of the truck, took a day off from his employment at a nearby factory and came down to the gravel pit where the complainant, Jaggars, was being loaded up for delivery of another load of gravel shortly before noon.

The truck owner, Joe Gibbs, told the complainant, Jaggars, that he, Gibbs, would take over the driving of the gravel truck for the remainder of the day and that he, the complainant, could leave to get ready for his trip to Memphis. However, before the complainant, Jaggars, left, Gibbs said that he was unfamiliar with the exact location of the road where the gravel was being dumped and asked the complainant, Jaggars, to accompany him on the next trip so that the owner, Gibbs, would know where the gravel was to be dumped. Jaggars agreed.

The complainant, Jaggars, drove the truck and the owner, Gibbs, sat beside him in the cab of the truck. After the gravel had been dumped and the parties were returning to the gravel pit, the complainant, who was still driving the truck, stopped at a cafe along the roadway near Bethel Springs, Tennessee, to buy some sandwiches

for his lunch. When the complainant, Jaggars, returned from the cafe he asked the truck owner, Joe Gibbs, to drive while he, Jaggars, ate the sandwiches. Gibbs took the wheel with Jaggars beside him. Gibbs negligently drove the gravel truck off the road causing the complainant Jaggars' injuries.

Complainant Jaggars regularly drove the gravel truck to his home some seven or eight miles from the gravel pit each night. On the day in question he had made at least two round trips from the gravel pit to the dumping point on the road which was being graveled and back to the gravel pit, a distance of about 20 miles on each trip.

On the day of the accident it was contemplated that after Jaggars showed Gibbs the dumping point on the highway and they returned to the gravel pit, he would take Gibbs' personal automobile and drive to Jaggars' home in the Morris Chapel Community some seven or eight miles away. Gibbs would drive home in the truck. Jaggars also planned to go to Memphis on the next day in the Gibbs' automobile.

Jaggars was paid so much per day for his work and usually he was paid on the basis of a half day or a full day. For his work on the day of the accident, he received a half day's pay. This payment was made after the accident.

The defendant Insurance Company contends that the accident happened before 1:00 o'clock on the day in question. The complainant, Jaggars, testified that the accident happened shortly after 1:00 P.M. The Chancellor found that the accident happened at approximately 1:00 P.M. The evidence does not preponderate against his

finding. Assignment of error No. 1 is respectfully over-ruled but we comment that we do not consider the time factor as determinative.

The exclusion clause in the policy relied upon by the defendant is as follows:

"(d) under coverage A, to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of (1) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law or (2) other employment by the insured;"

His Honor the Chancellor found as follows:

"(1) That at the time of the accident the relationship of employer and employee between Gibbs and Jaggars had ceased. Jaggars' presence in the ill-fated truck at such time was not as an employee, but as an invitee for the express benefit of Gibbs, the owner.

(2) It follows that the transportation accorded complainant at such time was not incidental to his contract of employment, because such contract had expired.

(3) The Court carefully reviewed the case of Vaughn v. [Standard Surety &] Casualty Company [27 Tenn. App. 671], 184 S.W.(2d) 556 and has determined this case is not analogous to the case at Bar, either by facts, proof or pleadings. I especially refer to dual suits being filed, one under the Workmen's Compensation Act and one under the Common Law Negligence."

In our opinion His Honor the Chancellor was in error and assignments of error II and III must be sustained.

Complainant Jaggars was instructed by his employer, Gibbs, to accompany Gibbs to the point on the roadway where the gravel was being dumped and Jaggars drove the gravel truck to the point, showed Gibbs where the gravel was being dumped, and started back to the gravel pit still driving the gravel truck. The fact that Gibbs took the wheel of the gravel truck at the request of complainant Jaggars to allow Jaggars to eat the sandwich did not alter or change the legal status of the parties. Jaggars was an employee of Gibbs when they left the gravel pit to go to the site of the dumping of the gravel and he remained an employee until the accident. Switching seats so that Gibbs could drive and Jaggars eat his lunch did not terminate the employment and make Jaggars an invitee.

In the case of Overstreet v. Norman, 44 Tenn.App. 343, 314 S.W.2d 47, the plaintiff, Mrs. Overstreet, rode in a pickup truck driven by her employer, Norman, to defendant Norman's bean field where the plaintiff and other workers were to gather beans for the defendant, Norman. The defendant regularly transported the employees including the plaintiff, Overstreet, in motor trucks from their homes to the bean fields in the mornings and transported them back to their homes in the afternoon. On the day in question the defendant, Norman, carried the plaintiff, Overstreet, and others in his truck from his home to the bean field. When they arrived at the bean field, the plaintiff, Mrs. Overstreet, was injured when she alighted from the truck bed to the ground and brought suit against the defendant, Norman. The question before the court was the duty of care owed by Norman to the plaintiff, Overstreet, and the defendant, Norman, contended that plaintiff was only an invitee.

This Court, speaking through Judge Felts, later Justice Felts of the Supreme Court, held that the relationship of master and servant existed between the parties. From his opinion we quote as follows:

"It is said for defendant that since she was injured before she reached the field, before she started picking beans, she was not working for him, not his employee or servant, and he owed her no duty as employer. Inasmuch, however, as he was carrying her in his truck to and from the place of work, we think she was constructively in his employment and he owed her the duty of master even though she had not actually begun picking the beans when the accident happened.

The general rule is that the master owes a duty of care to his servant while the servant is actually or constructively in the course of his employment; and where, as an incident to such employment, he is transporting the servant to or from his work, the servant is regarded as constructively in the course of his employment so that he owes a duty of care to the servant. 39 C.J., Master and Servant, sec. 397; 56 C.J.S. Master and Servant sec. 180; 35 Am.Jur., Master and Servant, sec. 173."

In Vaughn v. Standard Surety and Casualty Co., (1944), 27 Tenn.App. 671, 184 S.W.2d 556, plaintiff Vaughn was employed in building an electric power line in Warren County, Tennessee. The employees regularly were taken from the main office of the employer in Mc-Minnville, Tennessee, to the place where that particular crew would be engaged in work each day. In most instances these employees would likewise return to the employer's office on the trucks after the day's work but

there was no requirement that they do so. They were not paid for the time spent in going from the office in Mc-Minnville to the places where their work was performed nor were they paid for their time after work ceased during which they rode in the employer's truck back to Mc-Minnville. Plaintiff Vaughn was injured while riding in a truck of the employer en route back to McMinnville after the day's work. The liability insurance carrier of the employer declined payment on the grounds that the plaintiff was an employee of the insured at the time of the accident and entitled to Workmen's Compensation Insurance. Our Tennessee Court of Appeals held that the transportation furnished to the employee, Vaughn, to and from his work was a necessary incident to his contract of employment and a part thereof. This Court held that Vaughn was an employee at the time he was injured and excluded from coverage under the policy.

These two cases are controlling of the case at bar.

The decree of the lower court will be reversed and the complainant's original bill dismissed at the cost of the complainant.

Puryear and Matherne, JJ., concur.